UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
LANG PHARMA NUTRITION, INC.,   )
                               )
        Plaintiff,             )
                               )
    v.                         )   C.A. No. 16-371 S
                               )
AENOVA HOLDING GMBH,           )
                               )
        Defendant.             )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Lang Pharma Nutrition, Inc. ("Plaintiff"), a distributor of private label dietary supplement products to national retailers, is suing Aenova Holding GmbH ("Defendant"), a German manufacturer and supplier of dietary supplements, for misrepresentation. Before the Court are (1) Defendant's Motion to Dismiss the Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and failure to join Swiss Caps, Inc. (Defendant's subsidiary) as a required party pursuant to Rules 12(b)(7) and 19 (ECF No. 12); (2) Plaintiff's Motion to Strike a declaration filed by Defendant in support of its Motion to Dismiss (ECF No. 18); and (3) Swiss Caps, Inc.'s Motion to

Intervene (ECF No. 24). For the reasons set forth below, the Motion to Dismiss is DENIED, the Motion to Strike is DENIED AS MOOT, and the Motion to Intervene is DENIED WITHOUT PREJUDICE.

I. Background

The Court summarizes the communications between the parties and the events leading up to the litigation as alleged by Plaintiff, with reasonable inferences drawn in Plaintiff's favor.[1] In November 2013, Defendant sent marketing materials to Plaintiff promoting its softgel technology, EnteriGel™. After Plaintiff inquired about Defendant's capability to manufacture EnteriGel™ softgels using Plaintiff's fish oil, Defendant sent samples to Plaintiff and assured Plaintiff that it was ready to manufacture EnteriGel™ softgels on a commercial scale. Based on information Defendant provided to Plaintiff, Plaintiff secured a deal with Sam's Club to "launch a private label fish oil supplement in EnteriGel™ softgels" in January 2015.[2] Despite some manufacturing issues at Defendant's Miami facility (operated by its subsidiary Swiss Caps), Defendant assured Plaintiff that it would be able to manufacture the millions of softgel capsules that Plaintiff had promised to Sam's Club.

---

[1] Coll. Hill Properties, LLC v. City of Worcester, 821 F.3d 193, 195 (1st Cir. 2016).

[2] Compl. ¶ 22.

Continued manufacturing problems created a delay for the launch – the product was not actually launched at Sam's Club until July 2015 - and then caused Defendant to completely cease manufacturing the EnteriGel™ softgels in August 2015. Plaintiff offered refunds to many customers who experienced unpleasant side effects from the EnteriGel™ softgels as well as replacement supplements manufactured by a different company. Eventually, Sam's Club pulled Plaintiff's product from its shelves and returned all of its stock to Plaintiff.

II. Discussion

   A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] In addition to reviewing the allegations stated in the complaint, the Court may consider documents that are discussed in the complaint and

---

[3] Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

[4] Iqbal, 556 U.S. at 678.

included with the complaint as exhibits.[5]  When a false or fraudulent representation is alleged, the complaint must "specify the who, what, where, and when of the allegedly false or fraudulent representation."[6]

According to Defendant, the Complaint fails to state a claim upon which relief may be granted because (1) it does not set forth the prima facie elements of a claim for misrepresentation; and (2) the economic loss doctrine bars Plaintiff's ability to recover under tort law because the dispute is about the commercial sale of goods between two American companies.  Instead, Defendant contends, this case should be governed by contract law principles and the Uniform Commercial Code.

1. Misrepresentation Claim

Defendant argues that Plaintiff fails to properly allege any of the elements for either negligent or intentional misrepresentation.  Specifically, Defendant argues that the allegations in the Complaint cannot amount to misrepresentations

---

[5] Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 780 n.3 (1st Cir. 2014) (citing Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").

[6] Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004) (citation omitted).

4

of fact because Defendant's – or as Defendant claims, Swiss Caps' – representatives merely provided estimates and made promises about what would happen in the future. Defendant also argues that Plaintiff has failed to allege any justifiable reliance on Defendant's statements.

Plaintiff responds that it has specifically alleged all of the required elements for its claim of misrepresentation. Plaintiff argues that the statements at issue include Defendant's assertion that it had the present ability to provide Plaintiff with a commercial volume of EnteriGel™ capsules. Plaintiff also argues that whether its reliance on any of Defendant's statements was reasonable or justifiable is an issue of fact, not law.

The tort of negligent misrepresentation has four elements:

> (1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.[7]

---

[7] Cruz v. DaimlerChrysler Motors Corp., 66 A.3d 446, 453 (R.I. 2013) (quoting Manchester v. Pereira, 926 A.2d 1005, 1012 (R.I. 2007)); see also Mallette v. Children's Friend and Service, 661 A.2d 67, 69 (R.I. 1995); Francis v. American Bankers Life Assurance Co. of Florida, 861 A.2d 1040, 1046 (R.I. 2004); Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1257 (R.I. 2003).

"[T]he general rule is that mere unfulfilled promises to do a particular thing in the future do not constitute [a misrepresentation] in and of themselves."[8] "Future events or promises are not considered factual."[9] The Court is not clear whether Plaintiff intends to pursue negligent misrepresentation, intentional misrepresentation, or both. Regardless, the elements are the same, except that to prove an intentional misrepresentation, the second element is limited to a knowing misrepresentation of fact.[10]

The Court notes at the outset that Plaintiff has set forth a detailed array of allegations in its Complaint about its communications with Defendant, including dates, the individuals involved, and the content. Some of the allegations reflect statements that could be considered Defendant's estimates or promises to meet an objective in the future, but the Complaint also reflects allegations of present production capabilities in

---

[8] Cote v. Aiello, 148 A.3d 537, 548 (R.I. 2016) (quoting 37 Am. Jur. 2d Fraud and Deceit § 87 at 122 (2013)).

[9] Id. at 549 (citing 37 C.J.S. Fraud § 76 at 263-64 (2008) ("[T]o give rise to a liability for negligent misrepresentation, an alleged misrepresentation must be factual and not promissory or related to future events.")).

[10] See id.

the written materials it sent to Plaintiff in November 2013.[11] In addition, Plaintiff alleges that Defendant represented "it was ready to manufacture commercial production runs of EnteriGel™ softgels," and that when Plaintiff visited Defendant's Miami facility in February 2014, Defendant represented that it could produce 400-500 million capsules per year by May 2014.[12] Plaintiff alleges that these statements were false when Defendant made them because Defendant had not yet produced the EnteriGel™ capsules commercially.[13] Plaintiff also alleges that Defendants made the statements with the intent to induce Plaintiff into a commercial business transaction with it, that Plaintiff relied on Defendant's statements by entering into a business relationship with Sam's Club whereby Plaintiff was to be the exclusive seller of these capsules, and that Plaintiff was harmed by Defendant's false statements.[14]

The Court agrees with Plaintiff that whether its reliance on Defendant's representations was justifiable is an issue of fact that is not appropriate to consider in the current posture

---

[11] Compl. ¶ 10, ECF No. 1.

[12] Id. ¶¶ 11, 14.

[13] Id. ¶ 35.

[14] Id. ¶¶ 24, 25, 36–38.

7

of this case. At this pleading stage, Plaintiff must simply provide a plausible allegation that it relied on the statements that Defendant made. The merits of its allegations will be tested after the parties have engaged in discovery.

The Court concludes that Plaintiff has plausibly pleaded sufficient facts from which a trier of fact could draw the reasonable inference that Defendant is liable for misrepresentation, either intentional or negligent.[15] Plaintiff also "specif[ied] the who, what, where, and when of the allegedly false or fraudulent representation," as required by Rule 9.[16] The Court turns next to Defendant's argument that the business relationship between the parties precludes Plaintiff from any potential to prevail on its misrepresentation claim.

2. Economic Loss Doctrine

Defendant argues that the economic loss doctrine precludes Plaintiff from its attempt to turn its contract dispute into a tort action when it seeks purely economic damages, especially when Plaintiff attached a signed Exclusive Sales Agreement to the Complaint. Plaintiff counters that this doctrine is inapplicable in this case because the parties did not finalize or sign a supply agreement. Plaintiff also argues that its

---

[15] See Iqbal, 556 U.S. at 678.

[16] See Alternative Sys. Concepts, 374 F.3d at 29.

8

Complaint is based on "technology and process shortcomings" and is therefore not a contract dispute.[17]

"Economic loss is defined as 'costs associated with repair and-or replacement of a defective product, or loss of profits consequent thereto.'"[18]

> The economic loss doctrine preserves the line between tort and contract, providing that: If tort claims are based on duties that are imposed by contract, then under the economic-loss rule, contract law provides the remedies for economic losses. The economic-loss doctrine forbids a party from suing or recovering in tort for economic or pecuniary losses that arise only from breach of contract or are associated with the contract relationship. In other words, tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach-of-contract claim.[19]

This Court acknowledged many times that the Rhode Island Supreme Court has not addressed whether the economic loss doctrine applies to claims for misrepresentation, and has previously

---

[17] Opp'n to Mot. 16, ECF No. 16.

[18] Gail Frances, Inc. v. Alaska Diesel Elec., Inc., 62 F. Supp. 2d 511, 517 (D.R.I. 1999) (quoting Hart Engineering Co. v. FMC Corp., 593 F. Supp. 1471, 1481 n.11 (D.R.I. 1984)).

[19] Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp., 221 F. Supp. 3d 227, 237-38 (D.R.I. Nov. 1, 2016) (quoting 74 Am. Jur. 2d Torts § 24 (2015)).

9

considered this issue on a developed record at the summary judgment stage.[20]

For example, in Gail Frances, Inc. v. Alaska Diesel Electric, Inc., a buyer sued a seller under several theories, including breach of contract and negligent misrepresentation. In the absence of controlling Rhode Island law, the Court looked to other states' laws for guidance to resolve the issue at summary judgment about whether the economic loss doctrine precluded Plaintiff's negligent misrepresentation claim. The Court concluded that Defendant was entitled to judgment as a matter of law on this claim based on its reasoning that, if given the opportunity, the Rhode Island Supreme Court would likely hold that the economic loss doctrine precluded the misrepresentation claim when the parties had signed a sales agreement.[21]

In contrast, the Court much more recently concluded that a manufacturer of a product was not precluded from recovering pure financial losses under a theory of negligent misrepresentation when the plaintiff had also alleged several contract claims and had entered into an exclusive sales agreement with the product's

---

[20] See, e.g., T.G. Plastics Trading Co. Inc., v. Toray Plastics (America), Inc., 958 F. Supp. 2d 315, 329 (D.R.I. 2013); Gail Frances, 62 F. Supp. 2d at 517.

[21] Gail Frances, 62 F. Supp. 2d at 518.

distributor.[22]  The Court noted that, when a contract between the parties exists and a claim for negligent misrepresentation is made, the injured party can recover only expectation damages.[23]  In addition, the Court has held that the economic loss doctrine did not bar plaintiffs' claims that a defendant had orchestrated a fraudulent scheme that violated the pharmaceutical industry's standards, but acknowledged that the argument could be revisited during summary judgment if discovery revealed that the only basis for the claim was in contract.[24]

Here, while Plaintiff's alleged injury stems from a failed business venture with Defendant, it has chosen to frame its legal claim as one that focuses exclusively on Defendant's alleged misrepresentations that Defendant made to Plaintiff to initiate and develop the business relationship.  Moreover, Plaintiff has only claimed a single count of misrepresentation, and as noted earlier, it is not clear whether Plaintiff is pursuing negligent misrepresentation, intentional misrepresentation, or both.  Of course, time and discovery will soon reveal the precise nature of Plaintiff's claim.  But for

---

[22] T.G. Plastics, 958 F. Supp. 2d at 330.

[23] Id. at 328 (citing Gupta v. Customerlinx Corp., 385 F. Supp. 2d 157, 162 (D.R.I. 2005)).

[24] Sheet Metal Workers, 221 F. Supp. 3d at 238.

11

now, it is simply too early in the litigation cycle to determine whether the economic loss doctrine precludes Plaintiff's claim for misrepresentation. As in Sheet Metal Workers, this issue may be revisited during summary judgment after additional information and evidence has been gathered during the discovery phase of this litigation.[25]

B. Rule 12(b)(7)

A defendant may move to dismiss a claim if a plaintiff fails to join a required party pursuant to Rule 19.[26] Defendant argues that the Complaint fails to name the proper defendant because the statements that Plaintiff alleges were involved in the misrepresentations were made by individuals employed by Swiss Caps, not by Aenova. **[Mot. to Dismiss 1, 2, ECF No. 12-1]** In addition, Defendant asserts that the production of the supplements at issue was done entirely at a Swiss Caps facility, and Swiss Caps was the contracting party with Plaintiff. **[Mot. to Dismiss 17]** Defendant submitted a Declaration from the Vice President and Chief Commercial Officer of Swiss Caps, who averred that all of the marketing materials provided to Plaintiff had the Aenova logo with Swiss Caps USA clearly printed next to it, and that all of Plaintiff's interactions

---

[25] Id.

[26] Fed. R. Civ. P. 12(b)(7); J & J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015).

about the EnteriGel™ product were with Swiss Caps employees. **[Carlson Decl., ECF No. 13]** As an alternative to dismissing the Complaint, Defendant requests that the Court order the joinder of Swiss Caps pursuant to Rule 19(a)(2).[27]

Plaintiff contends that Swiss Caps is not a required party because the question of liability may be resolved without it, especially because Aenova, as the parent company, could adequately protect its subsidiary's interest in the outcome of the case. **[Opp'n to Mot. 5, 7, ECF No. 16]** Plaintiff also argues that the corporate representatives it dealt with held themselves out as representatives of Aenova, demonstrated by Hans Engels' signature on the Exclusive Sales Agreement made as "CEO Aenova/Swiss Caps," the email addresses being from "aenova-group.com," and the logo reflecting "Aenova" in larger font than "swiss caps." **[Opp'n to Mot. 7-8]**

"Rule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit. The Rule provides for joinder of required parties when feasible . . . and for dismissal of suits when joinder of a required party is

---

[27] As previously stated, Swiss Caps has also filed a Motion to Intervene.

not feasible and that party is indispensable."[28] "A party is a necessary party within the purview of Rule 19(a)(1)(A) only if, 'in that person's absence, the court cannot accord complete relief among existing parties.' Relief is complete when it meaningfully resolves the contested matter as between the affected parties."[29] "As long as a party's absence does not prevent the district court from affording complete relief, Rule 19(a)(1)(A) does not mandate that party's continuing presence."[30] In addition, "an absent party's interests cannot be harmed or impaired if they are identical to those of a present party."[31]

Rule 19(a)(1)(B) requires joinder when a

> person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[28] Unetixs Vascular, Inc. v. CorVascular Diagnostics, LLC, 217 F. Supp. 3d 537, 539–40 (D.R.I. 2016) (citing Bacardi Int'l Ltd. v. V. Suarez & Co., Inc., 719 F.3d 1, 9 (1st Cir. 2013)).

[29] Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014) (quoting Fed. R. Civ. P. 19).

[30] Id.

[31] Bacardi Int'l, 719 F.3d at 11 (citation omitted).

The Court concludes that Plaintiff has named the proper Defendant for its alleged claim of misrepresentation. Regardless of which entity technically employed the corporate representatives who worked with Plaintiff, the email communications between the parties reflect that the representatives named in the Complaint had "@aenova-group.com" email addresses.[32] In addition, the corporate logo featured on the marketing materials presented to Plaintiff predominantly shows either the "aenova" name on its own, or with "swiss caps" in smaller font under the parent company's name.[33] Also, contrary to Defendant's representation, the Exclusive Sales Agreement that the parties signed is clearly between "Aenova Holding GmbH" and Lang Pharma Nutrition, Inc. (not between Plaintiff and Swiss Caps), and is signed by Hans Engel, as "CEO Aenova Swiss Caps, Inc."[34] In sum, Swiss Caps is not a required party under Rule 19 and its interest in the outcome of this litigation will be protected by the fact that the named Defendant is its corporate parent.

---

[32] Compl. Exs. C, F, H, I, ECF Nos. 1-3, 1-6, 1-8, 1-9.

[33] See, e.g., Compl. Exs. C, D, ECF No. 1-3, 1-4.

[34] Compl. Ex. J, Exclusive Sales Agreement 5, ECF No. 1-10.

III. Conclusion

For the reasons stated herein, Defendant's Motion to Dismiss (ECF No. 12) is DENIED. Plaintiff's Motion to Strike Affidavit (ECF No. 18) is DENIED AS MOOT. Swiss Caps USA, Inc.'s Motion to Intervene (ECF No. 24) is DENIED WITHOUT PREJUDICE to refiling after Defendant files its answer to the Complaint.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date: August 3, 2017